UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
RONNIE L. DOMOGOLA,              )
                                 )
          Plaintiff              )
                                 )
     v.                          )   CIVIL NO. 2:09 cv 368
                                 )
T.A. McCORMICK, Trooper,         )
individually and in his official )
capacity as a Trooper with the   )
Indiana State Police,            )
                                 )
          Defendant              )
```

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 44] filed by the defendant, T.A. McCormick, on September 30, 2011. For the reasons set forth below, the motion is **DENIED**.

## Background

On February 24, 2008, the plaintiff, Ronnie Domogola, was riding on the Indiana Toll Road as a passenger in a vehicle driven by Fred Sullivan. Domogola, Sullivan, and their wives, Donna Domogola and Diana Sullivan, were on their way to South Bend to see a comedy show. Domogola and Sullivan were smoking marijuana in the vehicle when Domogola noticed that two officers had a vehicle stopped on the side of the road. Domogola told Sullivan to get in the other lane to avoid the troopers. Sullivan did not move over and subsequently was stopped by the defen-

dants, Trooper T.A. McCormick and probationary Trooper Nadel Samere Mohammed Nabahan, for failure to yield to the police officers' vehicle.

McCormick was employed with the Indiana State Police for over 15 years.  When he was hired, he attended the Indiana Law Enforcement Academy.  At the Indiana Law Enforcement Academy, the officers learn the Indiana police policies and procedures, including the policy on handcuffing an arrestee behind his back and double locking the handcuffs.  At the time of the traffic stop, McCormick was accompanied by probationary Trooper Nabahan, who had completed the law enforcement academy a couple months prior and was being trained in the field as an officer with full law enforcement powers.  McCormick was Nabahan's field training officer and was responsible for observing, teaching, and offering guidance to Nabahan during his 13-15 week supervised duty.  Probationary officers traditionally were not given much discretion at the beginning of their field training, but as their training progressed they were given greater discretion to make stops and decisions.

Nabahan approached Sullivan's vehicle and initiated contact with the occupants.  He took Sullivan's driver information to complete a traffic ticket and told McCormick that he noticed the smell of marijuana coming from inside the vehicle.  At this time,

another state police officer, Trooper Ted Bonner, arrived on the scene. Domogola, Sullivan, and their wives were asked to step out of the vehicle. McCormick noticed a leafy substance on Domogola, and Domogola admitted to possessing marijuana. A search of the vehicle revealed a small bag of marijuana.

McCormick instructed Nabahan to handcuff Domogola. The parties dispute the course of events at this point. A few months prior, on December 3, 2007, Domogola had undergone surgery to remedy a massive rotator cuff tear in his left shoulder. A couple days before his arrest, Domogola's physician noted a good recovery from the surgery but indicated that Domogola was not ready to begin formal therapy on his shoulder. Domogola testified at his deposition that he informed the officers that he had a shoulder injury and showed the officers a scar from his past shoulder surgery before he was handcuffed. Domogola testified that:

> And there was another cop there that said—you know, he said, "Well, you got a chain?" He goes, "No, I don't have one." And the other officer said, "I've got a chain in the car. We could cuff him in the front." And at that time the arresting officer, he looked at it, he said, "He'll be fine." Took my arms, cranked them behind my back and cuffed me.
>
> (Dep. of Ronnie Domogola, p. 35)

The other occupants of the car also told the officers that they could not handcuff Domogola behind his back because of his

3

shoulder condition. Domogola also complained that he pleaded with the troopers before being handcuffed, at one point asking them not to cripple him. He did not recall which officer handcuffed him. Nabahan escorted Domogola to the police car. Once Domogola was placed in the car, he started screaming and experienced what he described as a rip in his shoulder. The officers took him out of the vehicle and placed his arms in handcuffs in the front and proceeded to transfer him to the LaPorte County Jail. A few days later, it was discovered that his left rotator cuff had been torn again and that he required surgery.

At their depositions, McCormick and Nabahan did not remember anyone making them aware of Domogola's shoulder condition, nor did they remember seeing Domogola's shoulder scars prior to the arrest. McCormick had stated in response to the interrogatories served on him during the course of discovery and in the police report that Domogola used marijuana in conjunction with prescription medication for pain relief because he had surgery six weeks prior. McCormick stated that he questioned Domogola's honesty after he disapproved of being handcuffed. However, at his deposition, McCormick testified that Domogola placed his hands behind his own back and that he did not recall any mention of Domogola's shoulder problems prior to arrest. McCormick directed Nabahan to handcuff Domogola, and Nabahan proceeded to handcuff

Domogola behind his back. After Domogola complained that his shoulder hurt for a period of time, McCormick decided to deviate from his training and to place Domogola's handcuffs in front. McCormick and Nabahan agree that Domogola then was transported to the LaPorte County Jail.

Domogola filed a complaint against the Indiana State Police, McCormick, the LaPorte County Sheriff's Department, and Sheriff Michael F. Mollenhauer, alleging the Indiana State Police and LaPorte County Sheriff and his department were negligent or reckless in hiring, training, or supervising T.A. McCormick and unnamed employees of the Sheriff's Department. The parties entered a stipulation dismissing the Indiana State Police, McCormick in his official capacity, and the LaPorte County Sheriff and his department. Count I also was dismissed and Domogola and McCormick agreed to stipulate to dismiss the false arrest/imprisonment count, leaving Domogola's claim for excessive force. McCormick moves for summary judgment on this claim.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's case, and on which [that party] will bear the burden of proof at trial . . . ." *Kidwell*, 679 F.3d at 964 (*citing* *Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 662 (7th Cir. 2011) (*quoting* *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2548).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evalu-

6

ate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. *Wheeler*, 539 F.3d at 634 (*citing* *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

See also *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2553; *Stephens,* 569 F.3d at 786; *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact

finder could find for the nonmoving party); ***Springer v. Durflinger,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Title 42 U.S.C. §1983 provides a "federal cause of action for the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States . . . ." ***Livadas v. Bradshaw***, 512 U.S. 107, 132, 114 S.Ct. 2068, 2082, 129 L.Ed.2d 93 (1994). Section 1983 does not itself create substantive rights, but "it acts as an instrument for vindicating federal rights conferred elsewhere." ***Spiegel v. Rabinovitz***, 121 F.3d 251, 254 (7th Cir. 1997). When analyzing a §1983 claim, it is necessary to identify the specific constitutional right that was violated. ***Spiegel***, 121 F.3d at 254. Then, the validity of the claim must be judged by reference to the specific constitutional standard that governs the right. ***Graham v. Connor***, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).

Here, Domogola alleges that McCormick violated his Fourth Amendment right by applying excessive force during his arrest. The use of force is gauged according to a Fourth Amendment reasonableness standard. ***Graham v. Connor***, 490 U.S. 386, 395, 109

S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Holmes v. Village of Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997). This analysis looks to the totality of the circumstances, assessing whether the force used was excessive in light of the severity of the crime for which the plaintiff was being arrested, whether the plaintiff posed a threat to the safety of the officers or to other persons, and whether the plaintiff was resisting the officers or attempting to flee. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872; *Holmes,* 511 F.3d at 673. See also *Fidler v. City of Indianapolis*, 428 F.Supp.2d 857, 862 (S.D. Ind. 2006). The measure of reasonableness is made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and pays "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. The court must ask whether the officer "used greater force than was necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). In determining reasonableness, the court must account for the fact that police officers often have to make split-second decisions in tense situations. For this reason, not every push or shove violates the Fourth Amendment. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872.

Once a violation is identified, the plaintiff must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988); *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor. [S]tate employment is generally sufficient to render the defendant a state actor." *West*, 487 U.S. at 49-50, 108 S.Ct. at 2255 (internal quotations and citations omitted).

Additionally, a defendant cannot be held liable for deprivations that he did not personally cause either by direct action or by approval of conduct of others. Vicarious liability cannot support a claim. *See generally* *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is insufficient to show that a supervisor was careless in supervising a subordinate or in enforcing a policy. The plaintiff must show that the supervisor "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman*, 803 F.2d

269, 274 (7th Cir. 1986). The official need not directly participate in the constitutional deprivation. Rather, the official may be liable "if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Rascon*, 803 F.2d at 274. The official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye . . . " *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (*citing Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

The parties have submitted contradictory evidence as to whether McCormick and Nabahan were aware of Domogola's shoulder problems prior to placing him in handcuffs.[1] The officers do not recall being made aware of his injury, but all four occupants of the vehicle stated that the officers were informed. At the time of Domogola's arrest, McCormick was in charge of training and providing guidance to Nabahan. As McCormick was aware, the Indiana State Police policy called for an arrestee to be handcuffed behind his back. Nabahan did not have great discretion, learned the policies as written, and was acting on direction from McCormick. Because it was the policy to handcuff an arrestee

---

[1] In the pending motion, McCormick does not challenge whether excessive force was used in cuffing Domogola. Given the factual disputes on that issue, McCormick wisely saved the parties' and the court's time.

behind his back, by telling Nabahan to handcuff Domogola, McCormick was instructing Nabahan to handcuff Domogola behind his back.  It was McCormick's duty to instruct Nabahan and to tell him when to deviate from the policies.  Therefore, if McCormick was apprised of Domogola's condition, he should have instructed Nabahan to deviate from the policy if a reasonable officer in that situation would have behaved similarly.  This is not a matter of vicarious liability because McCormick directed the activity that may have led to a constitutional violation. For these reasons, McCormick's liability remains in question.

_____

Based on the foregoing, the Motion for Summary Judgment [DE 44] filed by the defendant, T.A. McCormick, on September 30, 2011, is **DENIED.**

ENTERED this 21st day of September, 2012

s/ ANDREW P. RODOVICH
United States Magistrate Judge